## CAIRNS v. OTTER SCHOOL DIST.

(Fourth Division. Flat. July 11, 1922.)

No. 433, Iditarod.

1. **Schools and School Districts** ⊜⇒135(3)—**Teachers—Contracts.**

The defendants, the Otter school board, made application to the commissioner of education to secure a teacher for them for the next term. The plaintiff, learning of that fact made formal application to the commissioner for the school, and informed him of her qualifications. The commissioner answered her telegram that she could have the school, stated the salary, and asked her to advise him if she would accept it. She accepted by return telegram, and proceeded to the place of teaching, and was inducted into the school by the school board, taught several months, was paid for the services by the board, who then sought to discharge her before the end of the nine months term. *Held*, a sufficient showing of her qualifications, and a binding contract with the school board.

2. **Schools and School Districts** ⊜⇒135(3)—**Teachers—Contract.**

Where a school board applied to the commissioner of education to employ a teacher for their school, and the commissioner does so, and sends the teacher to the board, who accept her, puts her in possession of the school, send their children to such school, and pays her the agreed salary for five months' service performed, such course of action is sufficient to constitute a contract to teach the school for the legal term of nine months.

3. **Schools and School Districts** ⊜⇒145—**Teachers' Certificates.**

On a suit by a school-teacher for a balance due her on her contract for teaching a district school the evidence showed that she had taught the previous year in the native schools of Alaska, under the employment of the United States Bureau of Education; that she had been employed to teach the district school in question by the territorial commissioner of education whose action had been approved by the school board of the district; that she had forwarded her credentials to the commissioner of education, who employed her, and whose duty it was to issue certificates to teach district schools, who returned her credentials without disapproval, but with a statement of wishes for her employment, but it is not apparent

⊜⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from his communication whether he did in fact issue the necessary certificate; that she taught the entire nine months, the first five months of which the board paid her salary. *Held*, that in the absence of evidence to establish that no certificate to teach was issued by the commissioner of education the court will assume that the commissioner of education was satisfied with her credentials, and so issued the certificate in compliance with the statute.

**4. Schools and School Districts ☜141 (2)—Discharge of Teacher.**

Two members of the school board, the director and the clerk, gave a school-teacher written notice in effect, "You may consider yourself discharged as teacher of the Otter school district." On suit for salary after that service, *held*, the two members of the board had no authority to discharge the teacher; that authority being only on the board as such, upon payment of the sums due her then for her salary.

This is an action by the plaintiff, Helen G. Cairns, against Otter school district and the members of the school board of the district, as director, clerk, and treasurer, upon an alleged contract for services as teacher of the district school at the rate of $200 per month for the period of nine months, which she claims she has faithfully and well performed under the terms of the contract.

The defendants file a joint answer, and, after admitting the regularity and legality of the establishment of the Otter school district and the legality of the election of the persons named as members of the school board according to law, they deny generally that the Otter school board entered into the contract alleged and that the plaintiff performed these services well and faithfully under the contract.

Under a permissive rule established by the court during the trial, evidence was admitted for the purpose of the defendants tending to show that the plaintiff had not proper capacity to perform the services alleged as a teacher, that she was guilty of various acts of alleged unprofessional conduct, because it appeared to the court that it was more in the interests of justice in this particular community to hear the matter in full, even though the court was undoubtedly of the opinion, and strongly of the opinion, that the answer did not of itself allow the defendant to take that course during the trial under the technical rules of pleading.

Albrecht & Taylor, of Iditarod, for plaintiff.
Louis K. Pratt, of Fairbanks, for defendant.

CLEGG, District Judge (orally). There are three main questions to be determined: First, as to whether or not a valid and legal contract, as alleged, was entered into; second, whether the plaintiff fully performed them faithfully; and, thirdly, as to whether or not she was guilty of the charge of incapacity and incompetency, or of any of the numerous acts alleged against her, constituting unprofessional conduct as a teacher.

The main questions concerning the establishment or non-establishment of the contract alleged by the complaint, as shown by the evidence, are practically admitted by the defendants, and are substantially as follows:

That the plaintiff, in the month of July, 1921, upon her way from Akiak, on the Kuskokwim river, where she had been employed as teacher under the United States Bureau of Education, Department of the Interior, took passage down the Yukon for the purpose of going outside, or elsewhere in the country, accompanied by Miss Patton, and while on her journey she learned of a vacancy in the Otter school district as teacher; that she was informed by Miss Patton that Judge Bunnell, who was a particular friend of hers, who was then the United States judge of the Fourth judicial division, was holding court at Flat, and that she would wire to him and ascertain whether there was a vacancy or not, and such other facts as were relevant to the occasion; that accordingly Miss Patton did wire on her behalf, and that Judge Bunnell answered, after consulting with J. G. Rivers, one of the defendants, who was the clerk of the school board.

The substance of the telegram of Judge Bunnell to Miss Patton on behalf of the plaintiff says that a vacancy does exist, and states the amount of salary that is ordinarily paid to the teacher, and advises her that the board has already referred to Lester D. Henderson, the commissioner of education of the territory of Alaska, asking him to furnish them a teacher, and advising her to communicate with Mr. Henderson or to communicate with Mr. Rivers at Flat. The plaintiff, in pursuance to the information conveyed in that telegram of Judge Bunnell, made a formal application by telegraph from

some point on the Yukon river to the commissioner of education, Mr. Henderson, at Juneau, stating, in substance, that she desired the appointment as teacher of the Flat school, and that she had New York credentials. In response to that telegram the commissioner of education wired her that she could have the Flat school, that the salary was $200 per month, and that she should advise him or his office if she would accept the position. The plaintiff, immediately upon receipt of the telegram and reading it, wired to Mr. Henderson that she would accept the position. She thereupon proceeded from where she was, and arrived at Iditarod, which is the landing place of the steamers for persons who are following the journey to Flat City. At that point she was met by one of the defendants, Dr. Moore, who was treasurer of the school board, and she showed him the telegram which she had from Mr. Henderson. Whether he was there, knowing she was going to arrive, or not, does not appear; but it is a fair inference from the testimony that he had notification from some source that she was coming, and that he was there to meet her. That fact is confirmed by the fact that he accompanied her to Flat, a distance of seven miles, and either then, or shortly thereafter, gave her possession of the school usually conducted by the Otter school board in the town of Flat City, gave her the keys, and installed her in the living quarters usually occupied by a teacher of that school. That shortly thereafter he introduced her, in the town of Flat City, to Mr. Strandberg, one of the defendants, a director of the school board, and that he had at that time a 15 minute conversation with her, during which time he said nothing at all, according to his testimony, about her employment; but the testimony of the plaintiff is that she discussed with Mr. Strandberg whether or not she should open the school immediately or wait until the regular time for the opening of the school, which was one or two days after the annual Labor Day in the month of September, the first week.

Some time before she entered upon her duties she also met Mr. Rivers, one of the defendants and the clerk of the school board, and discussed with him some general matters. And especially it was suggested at that time by him that she might earn an additional $25 if she would undertake to perform the

janitor services for the school, which the plaintiff then and there agreed to do for the extra compensation of $25 a month.

At the proper time for the opening of the school in September the plaintiff opened the school with proper ceremonies. Mr. Strandberg sent his five children of school age there, Mr. Rivers sent his two, and other children from the district were sent there, totaling a number of twelve. One of them, I think (or perhaps two), was not entitled to be admitted, but was admitted by the teacher. She commenced to perform her services, and did perform them, during the month of September, and in the early part of October received a voucher from the school board, which she signed, which entitled her to a warrant for the sum of $200, which was delivered to her by one of the officers of the school board, I think Mr. Rivers, or perhaps the treasurer, Dr. Moore. That she continued during the month of October, and at the end of that month she received a warrant for the sum of $250, which constituted the $25, which was not paid for the month of September, and the $25 which she was entitled to be paid during the month of October, for janitor services. That the same procedure was followed during the month of November; she received her check and signed her voucher as usual upon the regular forms furnished by the territorial board of education at the hands of the members of the school board. And the same thing occurred during the months of December and January. She received her last check from the school board on the 6th of February, at which time there were two of the members of the school board here; the other at that time being absent, namely, Dr. Moore, who had, as shown by the testimony, left the vicinity of Flat City in the early part of the month of November, and remained away and had never returned up to the 6th day of February, 1922, and the testimony shows he has not returned here since, and that nobody, so far as they have been interrogated on the trial, knows where he is at the present time. During the period mentioned both of the directors continued to allow their children to attend the school.

Mr. Rivers, in detailing the first or second conversation which he had with the plaintiff, says that he took it for granted that she was the teacher that he had written to the commissioner of education to furnish at the instance of the entire board on May 28th, which letter has been introduced in evi-

dence here and is marked Plaintiff's Exhibit D. It is signed by Mr. Rivers as clerk of the school board, and is addressed to "Lester D. Henderson, Territorial Commissioner of Education, Juneau, Alaska." And in this letter he says:

"Mrs. Monkman, who has taught our school during the past two years, leaves for the coast in a few days; therefore it is necessary that her place be filled before next term opens. As there is no one available here, please send us a good teacher. As an inducement to her you may tell her that in the rear of the school building we have partitioned off two good-sized living rooms, and as the entire building is heated by furnace, she would have no rent to pay nor wood to buy."

.    Further on it says:

"In selecting a teacher for us, please try and get one who has had experience in schools of mixed grades, as we will have all the grades from primary to eighth represented next year. It is perhaps unnecessary to add that she should be even-tempered, but firm, as occasion demands. In fact, the job is difficult, and sometimes discouraging, but our board will do everything possible to assist her."

It was upon the strength of this letter that Mr. Henderson undertook to comply with the request therein, and answered the wire of the plaintiff upon the Yukon river, when she made application at the suggestion of Judge Bunnell through the territorial commissioner of education. There is absolutely no contradiction of this fact, and of the fact of the sending of this letter.

It is now urged upon the court that there could have been no contract entered into between the board and the plaintiff, for the simple reason that the commissioner of education had no authority to enter into any contract with the plaintiff.

It is true that the law gives the commissioner of education no express authority to enter into a contract with a teacher of a school district outside of an unincorporated town; but the law establishing the uniform school system, which was passed by the Legislature in the year 1917, does authorize the commissioner of education to supervise all educational matters in the territory. Section 16 of the act, which is found at page 140 of the Session Laws of Alaska of 1917, says he shall have supervision of all matters pertaining to the public schools. And this same act constitutes him the head of the general public school system of Alaska.

Now, would it be contended by the defendants that, when the commissioner of education receives this letter, he should answer it either by wire or letter, and say to the Otter school board, "Get your own teacher; I have no business to get one for you?" I think anybody who will understand the comity which must exist between public officers, if the law is to be administered at all, whether they have any express authority or not, upon a request from a subordinate officer in the branch of the government of which they are the head, that they would certainly yield to the request of that public officer, and, if possible, assist him to get a teacher. It is the duty of the commissioner to see that the public schools are conducted, and conducted properly, generally; and if a school board writes to him and says that no teacher is available in the district, and calling upon him to assist them in getting one, I think it is entirely appropriate for the commissioner of education to answer a telegram of an applicant and say to her that she might have the school that she applies for, if it is the one that the school board asks him to furnish a teacher for, and state to her what the salary is going to be.

True, it is not a contract of itself; it is merely an inchoate agreement, entered into by the highest official of the educational department with an applicant for a position. And it is within the power of the board if that applicant thereafter appears to fill the position, to complete a contract with her. They can do that, either by requiring her to sign a written contract, or by entering into an oral contract with her, or by either acts and conduct assume that the inchoate agreement instituted with her by the commissioner of education is in force, follow its terms to the letter, and do everything that they would have done if they had a binding written agreement under the terms of a written contract, or they can, when the teacher appears, repudiate the action of their unauthorized agent, or of his actions in excess of his authority.

But the undisputed facts show that each individual member of this school board of the Otter school district accepted the plaintiff on sight. Mr. Rivers says he took it for granted that she was the teacher that Mr. Henderson had furnished, and it was unnecessary for her to tell him; and Mr. Strandberg did not see fit to go that far, did not ask her anything at all, according to his testimony; and Dr. Moore gave her the school

building, or possession of it, and possession of the· living quarters; and all three of them, up till the time that Dr. Moore left in the early part of 'November, recognized her as the teacher which they had asked the commissioner of education to furnish, and they must have had knowledge òf the fact that the commissioner of education had agreed with her for them to pay her the sum of $200 per month for the term of nine months.

The law says that the term of the school district shall be nine months. The estimate furnished by the Otter school district, which has been introduced in evidence and marked Plaintiff's Exhibit C, asks for an appropriation for the term of nine months. And the natural conditions, of which the court will take judicial notice, in which the town of Flat is situated, are such that no school board with a grain of sense would ask any teacher to come here unless she was to teach for the full term; nor would they permit her to commence to teach under the circumstances as shown by the testimony in this case unless they understood as well as she that she was to teach for the full term.

It is claimed by the defendants that no contract could be said, either in law or fact, to exist between the parties under these circumstances. It is claimed that she had no certificate, and the law requires that she have a certificate. It is claimed that the law says no territorial money shall be paid to any teacher, if it is shown she has violated any law of the territory. It is contended that not having any certificate forbids her from suing upon this contract and having it enforced.

The undisputed testimony is that she had the permission of the highest officer of the territorial educational department to accept this position or to reject it, after stating to him what her credentials were, and we must assume that that was a virtual, if not an actual, permission on his part that she should fill this position. But that is not all. The testimony shows here a letter from Mr. Henderson, dated November 30, 1921, in which he returns to her her credentials, and says in that letter, or words to this effect:

"I am herewith returning you your credentials which you sent me on making your application for a certificate. Trusting you will enjoy your work."

There is clear evidence from the commissioner of education, which is not disputed, that the plaintiff made application for a certificate under the law; but the fact that she is unable now to show that any certificate was in fact issued is not to be chargeable to her, nor alleged as a cause why the contract did not exist, which the court finds exists, as heretofore stated, simply for the reason that she is not chargeable with the negligence of a public officer in performing a public duty. If she regularly submitted her credentials to him, and he returns them to her and says that he trusts she will enjoy her work, we must assume that he is satisfied with her credentials, that he knows what she is doing, that she is an employé of his department, and that she is continuing in that employment; and the fact that it is not apparent from his letter whether he did in fact issue a certificate or not is certainly not to be charged against the plaintiff. The certificate may be lying on his desk, or under his desk or it may be lost in the mails, and the court will certainly not assume anything against the plaintiff on that ground.

It is further said that the law forbids territorial moneys to be paid to a teacher who has violated any law of the territory. The plaintiff has done everything that she can, everything within her power, to procure a certificate; and, as I have said, she can therefore not truly be said to have violated any law prescribed by the educational department or laws of the territory. So that does not prevent her from recovering upon this contract.

It is claimed as another ground why the plaintiff should not recover that she was legally discharged for cause—adequate cause it must be—on the 6th of February. The main facts constituting the cause claimed by the defendants is that she used excessive means, irregular means, in enforcing discipline in the school; that she referred insultingly in correcting the children of the school for violations of the rules, or for violations of good order in the school; and that she was generally incompetent.

To attempt to sustain these charges testimony is introduced of various alleged acts of misconduct on her part, commencing in the month of October and continuing through November and December and the latter part of January.

6 A.R.—41

The undisputed testimony of Mr. and Mrs. Strandberg shows that during these months they were informed by their children of various things which they said the teacher had done in the school room, expressions she had used, etc., and the two remaining directors, Dr. Moore having been outside at this time, Mr. Rivers and Mr. Strandberg, were about to withdraw their children from the school in the early part of December, but continued to allow them to remain until the beginning of the Christmas holidays, for the purpose of not interfering with the success of the Christmas entertainment, which, it would appear from their testimony, was usually given by the students of the school at Christmas in Flat City under the direction of the teacher.

It appears that after this entertainment, which occurred on the 24th of December, the facts related to them by their children, and some complaints made by Mr. Rivers' children to him and Mrs. Rivers, compelled Mr. Rivers and Mr. Strandberg to visit, for the first time, the Otter school conducted by the plaintiff, on the 27th of December. They reported to her at that time, if the testimony of Mr. Rivers and Mr. Strandberg can be believed, everything that had come to their knowledge as to her alleged indiscretions in speech and language and conduct. They were heard with patience and tolerance on her part; they were treated very properly in every respect; they were told by her that these things were not true, except that she had referred to the children and said that they were very little better than Kuskokwim Indians when they were running around. The acknowledgment of having said that to Mr. Strandberg apparently did not disturb his feelings any at that time, and the conclusion of the conference was very amicable, and the two directors went away very well satisfied, expressing the hope and opinion that they would undoubtedly get along better in the future, which was concurred in by the plaintiff.

Under these circumstances the court is asked to hear and pass upon these alleged indiscretions of the teacher during the months of October, November, and December, when these two complaining directors, Mr. Strandberg and Mr. Rivers, expressly themselves, by their actions on the 27th day of December, in conference with the teacher, condoned and forgave

her for any apparent infractions which may have been reported to them up to that time.

Under those circumstances, when they were thoroughly satisfied at that time, the court is not going to waste its time inquiring whether or not up to the 27th day of December this teacher committed anything which constituted unprofessional conduct or was an excessive use of discipline. On the contrary, the court will find that during these months, and does now find, that her conduct was exemplary in every respect, and that she was guilty of none of the charges preferred against her by any of the witnesses who have appeared here.

The undisputed testimony is that from the 24th day of December until the 6th of January, 1922, there was vacation, and it is admitted by all the children who have testified and by the parents that for that period of two weeks there were no complaints made by anybody against the teacher after the session was resumed on the 6th of January, so that carries us for fourteen days, and leaves us at the 20th day of January.

The court has good reasons for relying upon the testimony of the plaintiff, because she appears in every respect, in speech, in manner, in decorum and conduct under the trying ordeal of this trial, to be a lady of accomplishment, high-minded and superior to the ordinary run of public school-teachers of outlying districts in this territory.

It is true she has had very little experience as a school-teacher. She is an Easterner, has only been in the territory a year, taught school for a year, an Indian school on the Kuskokwim, a school organized by the United States Bureau of Education, and to teach which a teacher must have certain prescribed qualifications. The United States Bureau of Education accepted her. She filled her term there, and she came here under most adverse circumstances. Every other teacher who had preceded her, but one, had been a resident of this community, well known to everybody, well known to all the children, thoroughly experienced in the ways of this country, acquainted with its people, understanding their modes of thought and their standard of life and conduct and living; but this teacher, who came here, had none of these benefits or advantages. She was a total stranger in the territory, practically her first visit to a mining camp, and under these circumstances

this school board cannot be excused for the manner in which they attempted to perform their duties. They have made no effort to perform them. This teacher came here, and not one of them asked her anything about her qualifications. They had the opportunity to do so; they could have gone to her, either separately or collectively, and asked her where she was brought up, discussed with her her experience, found out all about her. It takes a man who is fit to be elected to a position on the school board only a minute or two to converse with anybody in order to find out whether they are fitted by temperament or disposition to fill the office of school-teacher of the district, and if they fail to do that, and make no effort to see whether or not a person they are permitting to teach their school is in any respect qualified—if they make no effort, I say, to ascertain anything, make no inquiry or investigation— this court is not going to interfere, unless there is convincing evidence introduced which will establish the facts claimed by the defendants, and there is none.

On the 6th of February, according to the testimony, Mr. Rivers and Mr. Strandberg went to the school and told the teacher that they wanted her to resign. She refused. They then went home and prepared a notice, and notified her that she might consider herself discharged.

As I have found heretofore, a valid, subsisting, and enforceable contract at that time existed on behalf of the plaintiff as complained in her complaint; and if I were mistaken in that regard from anything that has heretofore been said by me, the acts of the defendants, these two who were assuming to act for the Otter school board at the time, would establish the contract. If there was no contract then existing, why should they make any labored effort to cancel it, or to disaffirm it, or to notify the teacher that she might be considered discharged? If there was no contract existing, what business was it of the two remaining directors? If they were under no obligations to her, why should they attempt to discharge her? But they did attempt to discharge her, and even in that they did not succeed.

The notice is dated the 6th of February and says:

"You may consider yourself discharged as teacher of the Otter school district."

Of course, from the fact they had already been there and demanded her resignation, which she refused, she already considered herself discharged as far as those two members of the school board was concerned, and it was wholly unnecessary for them to give her a written notice that she should consider herself discharged. No date is mentioned; nothing is specified as to when the supposed discharge is to take effect, except as it may be put into effect by acceptance by the plaintiff. She never did put it into effect. According to the undisputed testimony, she continued to teach. I have already found that there was no just cause, or adequate cause, existing for the two remaining directors of the school board, who were present at that time, in attempting to dismiss the teacher. I now find that they did not dismiss her; that she never was discharged.

The law of 1919, referred to by counsel, which is the last word of the Legislature on the subject of school boards in outlying districts, says, in section 4, Session Laws of 1919, at page 50:

"Said board shall have the power to build or rent the necessary schoolhouse or schoolrooms, to equip the same with the necessary furniture and fixtures, to provide fuel and light, to hire and employ teachers, and in general to do and perform everything that may be necessary for the maintenance of the public school."

Other portions of the act require that the board shall consist of three members. It appears that all these three members were here up till the first part of November of 1921, but at that time Dr. Moore left the territory, as heretofore stated, and has never returned. This critical situation developed all through the latter part of the month of January and the first few days of February, 1922, and the directors who were here at that time, that is to say, the clerk and the director, the two defendants, Strandberg and Rivers, very well knew that Dr. Moore was outside. So far as the testimony shows, there has never been any complaint to Dr. Moore by any man, woman, or child as to the conduct of the school-teacher up to the time he went away. Why should not Dr. Moore, so long as he was here, be consulted on such an important matter, is not shown by the testimony; but it is undisputed that he went away in the early part of November, and was away on the 6th day of February, when these proceedings culminated.

Now, what should the directors who were here have done?

This statute confers authority upon the school board; it does not confer the authority upon the director and the clerk. The law is that, if there are three persons intrusted with the duty, they must confer together and counsel amongst themselves before attempting to undertake any official act. Two of them can act, providing the third is notified, or if he is there, and expresses no opinion or dissent, the act of the two will bind and be the official act of the three. But when the law places the authority upon three members, and says they shall constitute the board, and shall have the authority to hire teachers, it does not imply that the director and the clerk together have the authority to dismiss her without notice to the other third member. And if, as was the case in this case, when these two, this director and the clerk, knew that Dr. Moore was out of the territory, and had abdicated the duties of his office, and had turned them over to some person who had no bond or anything, had given her the money and the papers and documents which belonged to him, and which he had a right to keep as a matter of law, they had a right to presume that he had gone out, or at least left this district never to return, as the testimony shows was the case up to this time. Then, putting in force the principle so stoutly contended for by counsel for the defendants, that everybody is supposed to know the law, they should read section 2 of this act, at page 50 of the Session Laws of 1919, and they would find this:

"In case a vacancy in the membership of said board occurs from death, resignation, removal, or other cause, such vacancy may be filled by a special election, upon ten days' notice, called by the remaining members of the board, upon the petition of five qualified voters."

The board should then have declared a vacancy and proceeded to have an election, upon 10 days' notice, at the request of five qualified voters. Nobody expected them to assume the authorities of the absent member; the law did not expect them to. It made this provision especially for an occasion of this kind. There were urgent reasons why the clerk and the director should have taken advantage of that, because Mr. Strandberg had five children and Mr. Rivers had two in the school, and that constituted a majority of the children who were at the school. And if any delinquencies, or alleged delinquencies, existed on the part of the teacher against those

children, they should not attempt to sit there and be the judges in their own case, without the counsel of somebody else. The law expects that of no man. They were directly involved in this affair, and they should never have attempted to decide it in the way that they did.

But if they dismiss the teacher they must pay her. There is no getting away from it. They can dismiss her only by paying her. But to undertake, as the testimony shows in this case, under these circumstances, to dismiss the teacher without paying her, was nothing short of an outrage. It was advised against by the highest officer of the department of education of the territory in express language. His letter said: "Do not dismiss the teacher without a hearing." But in spite of that, for some reason or other unknown to the court, having the benefit of that eminent advice, they continued to go ahead and pursue the course they apparently had mapped out.

Upon all the issues raised, whether in the pleadings or by the evidence, the court finds on all issues in favor of the plaintiff for the amount sued for. All the credible evidence in the case, and reason and justice, demand this verdict and judgment.

Court will stand adjourned until to-morrow morning.

---

⬡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes